**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.*<br>LISA A. ALEXANDER and JAMES P. GOAN,<br>RELATORS, and on behalf of the<br>STATES of CALIFORNIA, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>WARNER CHILCOTT PLC, WARNER<br>CHILCOTT CORPORATION, WARNER<br>CHILCOTT (US), LLC, and JOHN DOES<br>#1-100, FICTITIOUS NAMES,<br><br>Defendants. | No. 11-cv-10545-RGS |

<u>**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR**</u>
<u>**MOTION TO DISMISS RELATORS' THIRD AMENDED COMPLAINT**</u>

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ...................................................................................................... 1

BACKGROUND ....................................................................................................... 2

    A.    Relators' Deficient Allegations........................................................... 2

    B.    Applicable Regulatory Framework..................................................... 5

          1.    Reimbursement Of Off-Label Prescriptions By Government Programs ..................................................................................... 5

          2.    The Anti-Kickback Statute ...................................................... 6

          3.    The Prior Authorization Process............................................... 7

ARGUMENT ............................................................................................................ 8

I.    RELATORS' THIRD AMENDED COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM FOR RELIEF UNDER THE FCA...................... 8

    A.    Relators Fail To Allege Facts Sufficient To Demonstrate That A False Claim For Payment Was Submitted To The Government. ..................................... 9

    B.    Relators Fail To Show That The Submission Of Any Allegedly False Claim For Payment Was Caused By WC's Alleged Misconduct........................ 14

          1.    Relators do not allege facts sufficient to demonstrate that misleading or off-label promotional statements were a substantial factor in the submission of any false claim for payment. ........................ 16

          2.    Relators do not allege facts sufficient to demonstrate that alleged inducements were a substantial factor in the submission of any false claim for payment............................................................ 18

          3.    Relators do not allege facts sufficient to demonstrate that activities surrounding the prior authorization process were a substantial factor in the submission of any false claim for payment. ........................ 20

    C.    Relators Fail To Show That Any State Medicaid Claims For Alleged Off-Label Prescriptions Were False. ................................................................ 22

    D.    Relators Fail To Show That Any Pre-PPACA Medicaid Claims That Allegedly Resulted From Kickbacks Were False. ................................................. 24

E.     Relators Do Not Allege Facts Sufficient To Demonstrate That WC Participated In A Conspiracy To Defraud The Government. ............................... 25

II.     THE THIRD AMENDED COMPLAINT FAILS TO PLEAD FRAUD WITH PARTICULARITY IN ACCORDANCE WITH FED. R. CIV. P. 9(B). ......................... 26

III.    THE THIRD AMENDED COMPLAINT FAILS TO STATE A CLAIM UNDER THE STATE FCAS. ................................................................................................. 29

IV.     ANY REMAINING CLAIMS IN THE THIRD AMENDED COMPLAINT SHOULD BE DISMISSED TO THE EXTENT THEY ARE BASED ON CONDUCT THAT OCCURRED OUTSIDE THE LIMITATIONS PERIOD ............... 29

CONCLUSION ....................................................................................................................... 30

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Allison Engine Co. v. United States ex rel. Sanders*,
    553 U.S. 662 (2008)..............................................................................8-9, 26

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...........................................................................................8

*Bamberg v. SG Cowen*,
    236 F. Supp. 2d 79 (D. Mass. 2002) ................................................................21

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)...........................................................................................8

*Buckman Co. v. Plaintiffs' Legal Comm.*,
    531 U.S. 341 (2001)...........................................................................................5

*Centro Medico del Turabo, Inc. v. Feliciano de Melecio*,
    406 F.3d 1 (1st Cir. 2005)..................................................................................8

*Corsello v. Lincare, Inc.*,
    428 F.3d 1008 (11th Cir. 2005) ........................................................................12

*Gagliardi v. Sullivan*,
    513 F.3d 301 (1st Cir. 2008)..............................................................................8

*Graham Cnty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*,
    559 U.S. 280 (2010)..........................................................................................24

*Hayduk v. Lanna*,
    775 F.2d 441 (1st Cir. 1985)......................................................................28, 30

*Hopper v. Solvay Pharms., Inc.*,
    588 F.3d 1318 (11th Cir. 2009) ................................................................. 11-12

*New York v. Amgen Inc.*,
    652 F.3d 103 (1st Cir. 2011)....................................................................24-25, 29

*Rodriguez-Cirilo v. Garcia*,
    115 F.3d 50 (1st Cir. 1997)..............................................................................15

*United States ex rel. Bane v. Breathe Easy Pulmonary Servs., Inc.*,
    597 F. Supp. 2d 1280 (M.D. Fla. 2009)..............................................14, 18, 20, 22

iii

*United States ex rel. Banigan v. Organon USA Inc.*,
   883 F. Supp. 2d 277 (D. Mass. 2012) ......................................................... 6, 23-24

*United States ex rel. Carpenter v. Abbott Labs., Inc.*,
   723 F. Supp. 2d 395 (D. Mass. 2010) ............................................15-16, 18-19, 30

*United States ex rel. Ciaschini v. Ahold USA Inc.*,
   282 F.R.D. 27 (D. Mass. 2012)................................................................4, 11, 25

*United States ex rel. Clausen v. Lab. Corp. of Am., Inc.*,
   290 F.3d 1301 (11th Cir. 2002) ........................................................... *passim*

*United States ex rel. Duxbury v. Ortho Biotech Prods., L.P.*,
   579 F.3d 13 (1st Cir. 2009)................................................................................14

*United States ex rel. Duxbury v. Ortho Biotech Prods., L.P.*,
   719 F.3d 31 (1st Cir. 2013).................................................................................28

*United States ex rel. Franklin v. Parke-Davis*,
   147 F. Supp. 2d 39 (D. Mass. 2001) ............................................................ 16-17

*United States ex rel. Franklin v. Parke-Davis*,
   No. 96-11651, 2003 WL 22048255 (D. Mass. Aug. 22, 2003) .................... 1, 14-15

*United States ex rel. Gagne v. City of Worcester*,
   565 F.3d 40 (1st Cir. 2009).................................................................................27

*United States ex rel. Karvelas v. Melrose-Wakefield Hosp.*,
   360 F.3d 220 (1st Cir. 2004)..............................................................8-10, 24, 26-27

*United States ex rel. Lampkin v. Johnson & Johnson, Inc.*,
   No. 08-5362, 2013 WL 2404238 (D.N.J. May 31, 2013).....................................12

*United States ex rel. Nathan v. Takeda Pharms. N. Am., Inc.*,
   707 F.3d 451 (4th Cir. 2013) ................................................................. 10-11, 14

*United States ex. rel. Nowak v. Medtronic, Inc.*,
   Nos. 08-10368, 09-11625, 2011 U.S. Dist. LEXIS 82346 (D. Mass. July 27, 2011).............27

*United States ex rel. Rost v. Pfizer, Inc.*
   507 F.3d 720 (1st Cir. 2007)............................................................... *passim*

*United States ex rel. Rost v. Pfizer, Inc.*,
   253 F.R.D. 11 (D. Mass. 2008)...........................................................................23

*United States ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*,
   472 F.3d 702 (10th Cir. 2006) ...........................................................................14

*United States v. Caronia,*
    703 F.3d 149 (2d Cir. 2012)..........................................................................................5

*United States v. President & Fellows of Harvard Coll,,*
    323 F. Supp. 2d 151 (D. Mass. 2004) ..................................................... 15, 25-26

## STATUTES

21 U.S.C. § 301 ...........................................................................................................1

28 U.S.C. § 1367 ........................................................................................................29

31 U.S.C. § 3729 ..........................................................................................1, 4, 25-27

31 U.S.C. § 3731 ........................................................................................................29

42 U.S.C. § 1320a-7b .....................................................................................1, 6-7, 24

42 U.S.C. § 1395c ........................................................................................................6

42 U.S.C. § 1395w-102................................................................................................6

42 U.S.C. § 1396a ........................................................................................................6

42 U.S.C. § 1396b ........................................................................................................6

42 U.S.C. § 1396r-8 ..................................................................................6, 7, 23, 24

Colo. Rev. Stat. § 25.5-4-303.5 .................................................................................29

Conn. Gen. Stat. § 17b-301a ......................................................................................29

D.C. Code § 2-308.13 .................................................................................................29

Ga. Code Ann. § 49-4-168 ..........................................................................................29

Ind. Code § 5-11-5.5 ...................................................................................................29

Iowa Code § 685.1 ......................................................................................................29

Minn. Stat. § 15C.01 ...................................................................................................29

Mont. Code Ann. § 17-8-401 ......................................................................................29

N.C. Gen. Stat. § 1-605 ..............................................................................................29

N.J. Stat. Ann. § 2A:32C-1 ........................................................................................29

N.M. Stat. Ann. § 27-14-1 ................................................................................29

N.Y. State Fin. Law § 187 ................................................................................29

Okla. Stat. tit. 63, § 5053 ................................................................................29

R.I. Gen. Laws § 9-1.1-1 ................................................................................29

Tex. Hum. Res. Code Ann. § 36.104(b) ...........................................................29

Wash. Rev. Code Ann. § 74.66.005 ..................................................................29

Wis. Stat. § 20.931 ................................................................................29

## OTHER AUTHORITIES

21 C.F.R. § 99.1 ................................................................................5

21 C.F.R. § 201.100 ................................................................................5

21 C.F.R. § 202.1 ................................................................................5

21 C.F.R. § 314.500 ................................................................................5

42 C.F.R. § 423.578 ................................................................................7

42 C.F.R. § 1001.952 ................................................................................7

Federal Rule of Civil Procedure 9(b) .......................................................... *passim*

Federal Rule of Civil Procedure 11 ..................................................................21

Federal Rule of Civil Procedure 12(b)(6) ......................................................8-9

Federal Rule of Civil Procedure 15(c)(1) ........................................................30

Fraud Enforcement Recovery Act, Pub. L. No. 111-21, 123 Stat. 1617 (2009)............4

H.R. Rep. No. 95-593 (1977)................................................................20

Patient Protection and Affordable Care Act, Pub. L. No. 111-148, 124 Stat. 119 (2010).........9, 24

## INTRODUCTION

Relators Lisa A. Alexander ("Alexander") and James P. Goan ("Goan") bring this action under the False Claims Act, 31 U.S.C. § 3729, *et seq.* ("FCA") against Warner Chilcott plc, Warner Chilcott Corporation, and Warner Chilcott (US), LLC (collectively, "WC" or "the Company"). They allege that WC engaged in improper practices in connection with its marketing of pharmaceutical products to healthcare providers. The operative pleading in this case, the Third Amended Complaint ("TAC"), devotes hundreds of paragraphs to elaborate descriptions of these alleged practices. Relators claim, for example, that WC promoted its products for uses other than those approved by the Food and Drug Administration ("FDA"), in violation of the Food, Drug, and Cosmetic Act, 21 U.S.C. § 301, *et seq.* ("FDCA") and related regulations; that the Company paid kickbacks to doctors to encourage them to prescribe WC drugs in violation of the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b) ("AKS"); and that the Company falsified information in requests to the government for prior authorization for the reimbursement of prescriptions for WC's products.

Liability under the FCA, however, "does not attach to violations of federal law or regulations, such as marketing of drugs in violation of the FDCA, that are independent of any false claim." *See United States ex rel. Rost v. Pfizer, Inc.*, 507 F.3d 720, 727 (1st Cir. 2007). Rather, Relators must show that these allegedly unlawful activities resulted in the submission to the government of a false claim for payment, *see id.* at 733, and that WC's conduct was a "substantial factor" in causing such submissions, *see, e.g.*, *United States ex rel. Franklin v. Parke-Davis*, No. 96-11651, 2003 WL 22048255, at *4 (D. Mass. Aug. 22, 2003). Despite multiple amendments of their complaint, Relators have failed to meet these standards. Relators have not identified any claims submitted to Medicare, nor have they shown that any claims were submitted for off-label prescriptions or for prescriptions written as a result of WC's involvement

in the prior authorization process.  Although Relators have identified some claims allegedly paid by six state Medicaid agencies for prescriptions that Relators assert resulted from unlawful kickbacks, they have not alleged sufficient facts to show that WC's conduct was a substantial factor in the submission of these or any other claims to any government program.  Additionally, the TAC fails to present any of the necessary details under Rule 9(b) regarding the vast majority of allegedly false claims submitted to the government.  As a result, the TAC must be dismissed.

## BACKGROUND

### A.      Relators' Deficient Allegations

Relators filed their original Complaint under seal on March 30, 2011, and their First Amended Complaint under seal on November 19, 2012.  On January 2, 2013, the United States and five states notified the Court that they would not intervene at that time, and the next day the Court directed that the First Amended Complaint be unsealed and served on WC.  Relators filed a Second Amended Complaint ("SAC") on April 22, 2013, which WC moved to dismiss.  After reviewing WC's motion, Relators sought and were granted leave to file the operative TAC on August 22, 2013.  This motion supersedes WC's initial motion.

Relators are former employees of WC who began working for the Company in October 2009, after its acquisition of certain branded pharmaceutical products from The Procter & Gamble Company.  Alexander served as a Portfolio Market Manager and Goan as a Dermatology and Gastroenterology Market Manager.  Both worked in Michigan.  Their employments at WC were terminated on December 9, 2011 and April 27, 2011, respectively. *See* TAC ¶¶ 13-17.

The gist of Relators' allegations is that since 2003, WC has improperly marketed several pharmaceutical products[1] by (1) promoting the products through misleading statements and for uses other than those for which they were approved by the FDA (known as "off-label" uses), (2) providing improper inducements to healthcare providers and office staff to encourage prescriptions of the products, and (3) falsifying prior authorization requests to obtain reimbursement for prescriptions of the products.[2]  *See id.* ¶¶ 2-4.  Notably, Relators were not even employed by WC for the majority of the period during which the alleged misconduct occurred.  Relators allege that the WC sales force told healthcare providers that WC products could be used for off-label purposes or were superior to competitor drugs without substantiated support for these assertions.  *See, e.g.*, *id.* ¶¶ 294, 349, 395, 583.  Relators also allege that WC induced healthcare providers to write prescriptions for WC's products by providing meals, gifts, and compensation for speaking at WC-sponsored programs and events.  *See, e.g.*, *id.* ¶¶ 79, 105, 424.  Relators further allege that WC sales representatives completed and submitted falsified prior authorization requests that included inaccurate statements regarding a patient's history or need for a particular product, and that sales representatives induced physicians' office staff to do the same.  *See, e.g.*, *id.* ¶¶ 144, 147, 268-69, 289, 495.

---

[1] The products referenced in the TAC include medications indicated to treat post-menopausal osteoporosis (Actonel and Atelvia), ulcerative colitis (Asacol (400 mg) and Asacol HD), acne (Doryx), overactive bladder (Enablex), and vaginal dryness (Estrace), as well as oral contraceptives (Loestrin and Lo Loestrin).  Four of these products—Actonel, Asacol, Asacol HD, and Enablex—were not acquired by WC until 2009.  *See* TAC ¶¶ 224, 384, 539.  Atelvia was not approved until October 2010.  *See id.* ¶ 229.  Atelvia and Lo Loestrin were both launched in January 2011.  *See id.* ¶ 233.

[2] Relators do not allege that WC engaged in each of these promotional practices for every drug. For instance, Relators have not alleged that WC promoted Asacol or Estrace for off-label uses. Nor have Relators alleged that the WC sales force falsified prior authorization forms for Actonel, Asacol, Asacol HD, Estrace, Loestrin, or Lo Loestrin.

The TAC asserts causes of action for the presentation of false claims, in violation of 31

U.S.C. § 3729(a)(1); for making, using, or causing to be made or used a false statement material

to false claims, in violation of § 3729(a)(2); and for conspiracy to present false claims or make or

use false statements material to false claims, in violation of § 3729(a)(3).[3]  *See* TAC ¶¶ 671-81.

The TAC also asserts claims under various state statutes that are analogous to the federal FCA.

*See id.* ¶¶ 682-878.  Relators seek treble damages, civil penalties, and other relief for what they

assert were hundreds of millions of dollars improperly paid out by federal and state

governmental entities.  *See id.* ¶ 5; *id.* Prayer for Relief ¶¶ A-B.

Although the TAC devotes hundreds of paragraphs to allegations of WC's supposedly

improper marketing practices, the pleading fails to connect those alleged practices to the

submission of false claims for payment.  Indeed, Relators have not identified a single

prescription written for an off-label use or resulting from assistance by a WC sales representative

in the prior authorization process.  Relators also have failed to identify any patient who allegedly

received such a prescription or any physician who wrote such a prescription for a federally-

insured patient.  Nor have Relators shown that the alleged misleading or off-label marketing or

falsified prior authorization forms were a substantial factor in causing any such claim

submission.  In addition, Relators have not identified a single prior authorization request that

allegedly contained false or fraudulent information.

Similarly, Relators have failed to identify the amount or date of a single reimbursement

claim submitted to Medicare or allegedly resulting from the purported off-label marketing or

---

[3] Congress amended the FCA in 2009 with the enactment of the Fraud Enforcement and
Recovery Act ("FERA"), Pub. L. No. 111-21, 123 Stat. 1617.  FERA re-numbered the statutory
provisions under which Relators have brought suit but did not alter the relevant substance of
those provisions.  *See United States ex rel. Ciaschini v. Ahold USA Inc.*, 282 F.R.D. 27, 29 n.7
(D. Mass. 2012).

involvement in the prior authorization process.  Relators have identified reimbursement claims

allegedly submitted to six state Medicaid agencies for prescriptions allegedly written as a result

of kickbacks, but, even for these claims, Relators have not adequately shown that the alleged

inducements were a substantial factor in the submission of the claims.  Despite repeated

amendments and opportunities to correct the deficiencies in their pleadings—even after having

reviewed WC's motion to dismiss the SAC—Relators' claims remain deficient.

### B.   Applicable Regulatory Framework

Relators' three primary sets of claims—those related to alleged misleading and off-label

promotion, kickbacks, and falsification of prior authorization forms—all arise in the context of

an intricate regulatory framework governing the promotion of pharmaceutical products.

### 1.   Reimbursement Of Off-Label Prescriptions By Government Programs

Relators' first set of claims relate to the alleged promotion through misleading statements

and for off-label uses of various pharmaceutical products.  The FDCA and regulations

promulgated thereunder generally restrict the affirmative promotion of drugs to the uses for

which they were approved by the FDA, *see, e.g.*, 21 C.F.R. §§ 201.100, 314.500, and proscribe

advertisements that make unsubstantiated comparative claims about one product's safety or

effectiveness over another's, *see* 21 C.F.R. § 202.1(e)(6)(ii).  These regulations allow, however,

for the dissemination of information concerning off-label uses in particular circumstances.  *See,*

*e.g.*, 21 C.F.R. § 99.1, *et seq.*  In addition, physicians are permitted to prescribe drugs for off-

label uses, *see Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 351-52 (2001), and the

government cannot bring criminal charges under the FDCA against pharmaceutical

manufacturers or their representatives for promoting "the lawful, off-label use of an FDA-

approved drug," *see United States v. Caronia*, 703 F.3d 149, 169 (2d Cir. 2012).

Consistent with the government's discouragement of off-label drug use, not all off-label prescriptions are reimbursable by government programs.[4]  In particular, under Medicare, only prescriptions written for "medically accepted indications" will be reimbursed.  *See* 42 U.S.C. §§ 1395w-102(e).  A medically accepted indication is a use of a drug that is either (1) approved under the FDCA or (2) supported by one or more citations in specified compendia.  *See* § 1396r-8(k)(6).  Likewise, Medicaid reimburses prescriptions for "covered outpatient drugs," *see* § 1396b(i)(10), a defined term that does not include drugs that are not used for medically accepted indications as defined above.  *See* § 1396r-8(k)(3).  Additionally, however, under Medicaid, states "may exclude or otherwise restrict coverage of a covered outpatient drug if the prescribed use is not for a medically accepted indication."  § 1396r-8(d)(1)(B)(i) (emphasis added).  In other words, states are allowed to decide whether or not to reimburse prescriptions written for off-label purposes.  *See United States ex rel. Banigan v. Organon USA Inc.*, 883 F. Supp. 2d 277, 294 (D. Mass. 2012).

## 2.    The Anti-Kickback Statute

Relators' second set of claims relate to allegedly improper inducements that Relators assert were provided to physicians and their staffs to encourage prescriptions of WC products. The AKS prohibits the payment of any remuneration to induce either the purchase of or the recommendation to purchase any item that may be reimbursable under a federal healthcare program.  *See* 42 U.S.C. § 1320a-7b(b).  The AKS also provides, however, for a number of exemptions, or "safe-harbors," for specific types of conduct.  For example, discounts that are

---

[4] Medicare is a health insurance program for persons who are at least 65 years old or who suffer from certain disabilities or diseases.  *See* 42 U.S.C. § 1395c.  Medicaid is a cooperative federal-state program that offers medical assistance for persons with low income.  *See* 42 U.S.C. § 1396a.

"properly disclosed and appropriately reflected" are not considered unlawful remunerations. § 1320a-7b(b)(3)(A). Relatedly, discounts provided by offerors—entities that promote the purchase of reimbursable products but do not directly transact with the buyers—are not subject to the AKS so long as the offeror (1) informs the buyer or entity submitting the claim for reimbursement "in a manner reasonably calculated to give notice" of the requirements to report the discount and (2) does not impede the buyer's or seller's ability to meet its disclosure obligations. *See* 42 C.F.R. § 1001.952(h).

### 3. The Prior Authorization Process

Relators' third and final set of claims relate to the alleged falsification of information in prior authorization forms. A prior authorization form must be completed by a physician in order for a patient to obtain reimbursement by Medicare or Medicaid for a prescription of a drug that has not previously been approved for coverage. *See, e.g.*, 42 C.F.R. § 423.578(a) (certain Medicare payers with tiered formularies must establish exceptions processes by which they will, in certain circumstances, cover non-approved drugs); 42 U.S.C. §§ 1396r-8(d)(1)(A), (d)(5) (authorizing states to subject drugs to prior authorization process). The form typically must explain why an alternative drug included in the government program's formulary is not as effective for the patient as the prescribed drug and/or why a covered drug would cause the patient adverse effects. *See* 42 C.F.R. § 423.578(a)(4). If the government program accepts the prior authorization request, the patient may fill the prescription at a pharmacy and the pharmacist may submit a claim for reimbursement. On the other hand, if the request is denied, the physician must select an alternative course of treatment for the patient.

**ARGUMENT**

I.    **RELATORS' THIRD AMENDED COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM FOR RELIEF UNDER THE FCA.**

Dismissal of a complaint under Fed. R. Civ. P. 12(b)(6) is appropriate if the complaint fails to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). The complaint must raise "more than a sheer possibility that a defendant has acted unlawfully," *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556), and the plaintiff may not merely allege "labels and conclusions" and recite the elements of a cause of action. *Twombly*, 550 U.S. at 555. Rather, the plaintiff must set forth sufficient factual allegations to allow the court reasonably to infer that the defendant is liable for the alleged misconduct. *Iqbal*, 556 U.S. at 678. If the complaint does not contain "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory," dismissal is appropriate. *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008) (quoting *Centro Medico del Turabo, Inc. v. Feliciano de Melecio*, 406 F.3d 1, 6 (1st Cir. 2005)).

In cases brought under the FCA, a relator's allegations must also comply with Rule 9(b), which provides that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *see United States ex rel. Karvelas v. Melrose-Wakefield Hosp.*, 360 F.3d 220, 228 (1st Cir. 2004) ("Rule 9(b) applies to claims under the FCA."), *abrogated in part on other grounds by Allison Engine Co. v. United States ex rel. Sanders*, 553 U.S. 662 (2008). Rule 9(b) requires that "a plaintiff's averments of fraud specify the time, place, and content of the alleged false or fraudulent representations." *Id.* at 226.

Under these standards, the TAC should be dismissed.  Although Relators devote an enormous amount of verbiage in the TAC to allegations concerning supposed kickbacks provided to physicians, they fail to show that this alleged conduct caused the submission of false claims for payment.  In addition, Relators do not allege that any misleading or off-label product promotion or participation in the prior authorization process by WC personnel resulted in the submission of a single false claim for payment to the government, or that WC's conduct caused any such submission.  As explained below, these deficiencies are fatal.

The TAC also suffers from additional dispositive flaws.  In particular, Relators have failed to show that any claims submitted to any state Medicaid agency in connection with prescriptions written for off-label uses were false; that any Medicaid claims pre-dating the Patient Protection and Affordable Care Act ("PPACA"), Pub. L. No. 111-148, 124 Stat. 119, that allegedly resulted from kickbacks were false; or that WC conspired with healthcare providers to violate the FCA.

**A.      Relators Fail To Allege Facts Sufficient To Demonstrate That A False Claim For Payment Was Submitted To The Government.**

It is well-settled that under Rules 12(b)(6) and 9(b), allegations of unlawful marketing activities by a pharmaceutical company, standing alone, are insufficient to state a claim for relief under the FCA.  *See United States ex rel. Rost v. Pfizer, Inc.*, 507 F.3d 720, 727 (1st Cir. 2007) ("FCA liability does not attach to violations of federal law or regulations, such as marketing of drugs in violation of the FDCA, that are independent of any false claim."), *abrogated in part on other grounds by Allison Engine*, 553 U.S. 662; *Karvelas*, 360 F.3d at 225 ("Not all fraudulent conduct gives rise to liability under the FCA.").  Instead, Relators must allege facts sufficient to show that these alleged activities resulted in the submission to the government of false claims for payment.  *See Rost*, 507 F.3d at 733 (affirming dismissal of complaint where relators

"suggest[ed] fraud was possible" but failed to demonstrate that alleged conduct led to submission of false claims). This requirement, although influenced by the dictates of Rule 9(b), goes to the core of the elements that Relators must show to plead a plausible claim for relief under the FCA.[5] *See Karvelas*, 360 F.3d at 225 ("Evidence of an actual false claim is 'the *sine qua non* of a False Claims Act violation'" (quoting *United States ex rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1311 (11th Cir. 2002)).

The First Circuit's decision in *Rost* is instructive. In that case, the relator claimed that "false claims were allegedly submitted by doctors who were allegedly induced and seduced by defendants into prescribing [a medicine] for off-label uses." 507 F.3d at 732. Although the complaint "amply describe[d] illegal practices in which [the defendant] allegedly engaged," these practices did not provide "a sufficient basis for an FCA action because they [did] not involve claims for government reimbursement." *Id.* "At most," the First Circuit explained, the allegedly unlawful marketing practices "suggest[ed] fraud was possible," but they did not "strengthen the inference of fraud beyond possibility." *Id.* at 733. Indeed, it was also possible that physicians did not seek federal reimbursement for any off-label prescriptions, or that they only wrote such prescriptions "where the patients paid for [the drug] themselves or when the patients' private insurers paid for it." *Id.* In light of the relator's failure to connect the defendant's alleged conduct to the submission to the government of a false claim for payment, the complaint was subject to dismissal. *See id.*

The Fourth Circuit recently was confronted with a similar factual scenario in *United States ex rel. Nathan v. Takeda Pharmaceuticals North America, Inc.*, 707 F.3d 451 (4th Cir.

---

[5] Rule 9(b) also imposes other requirements related to the particularity with which Relators must identify any allegedly false claims submitted to the government. These requirements are addressed *infra* in Section II.

2013).  In *Nathan*, the relator alleged that the defendant promoted a new drug for purposes for

which it was not indicated but for which another, earlier drug had been indicated.  *Id.* at 455.

Although the relator pointed to thousands of prescriptions that had been written over a period of

years, he did not provide any information as to the dosages, the prescribing doctors, or the

illnesses treated by these drugs to support his assertion that the prescriptions were written for off-

label purposes.  *Id.* at 460.  Furthermore, he did not set forth any facts suggesting that any of the

prescriptions were submitted to the government for reimbursement.  As the court explained:

> Relator essentially has alleged that some claims must have been
> presented to the government for payment, because prescriptions of
> this kind frequently and routinely are obtained by persons who
> participate in health care programs sponsored by the federal
> government, or because federally insured patients received off-
> label prescriptions.

*Id.* at 461. The Fourth Circuit concluded that these allegations were insufficient because they

were "inherently speculative in nature."  *Id.*  Among other shortcomings, the allegations did not

allow the court "to infer that a Medicare patient who has received a prescription for an off-label

use actually filled the prescription and sought reimbursement from the government."  *Id.* at 460.

Similarly, in *United States ex rel. Ciaschini v. Ahold USA Inc.*, 282 F.R.D. 27 (D. Mass.

2012), the court dismissed the relator's complaint after finding that the relator failed to "describe

actual claims sent to the government for payment."  *Id.* at 35.  The relator asserted that the

defendant defrauded government programs by submitting claims for reimbursement for full

prescriptions when patients only had received partial prescriptions.  *Id.* at 34.  Although the

relator alleged facts about the prescriptions themselves—including dates, quantities, and patient

information—there were no facts to suggest that the defendant ever submitted this information to

the government.  *Id.* at 35; *see also, e.g.*, *Hopper v. Solvay Pharms., Inc.*, 588 F.3d 1318, 1326

(11th Cir. 2009) (affirming dismissal of FCA action where complaint "[did] little more than

hazard a guess that unknown third parties submitted false claims for Medicaid reimbursement"); *United States ex rel. Clausen v. Laboratory Corp. of America, Inc.*, 290 F.3d 1301, 1312 (11th Cir. 2002) ("failure to allege with any specificity if—or when—any actual improper claims were submitted to the Government is indeed fatal to [relator's] complaints").

Likewise, in *United States ex rel. Lampkin v. Johnson & Johnson, Inc.*, No. 08-5362, 2013 WL 2404238 (D.N.J. May 31, 2013), the court dismissed a complaint in which the relator asserted that the defendant pharmaceutical companies provided kickbacks to physicians, in the form of "free surgical kits" and sales of surgical equipment at discounted rates, to induce them to prescribe the defendants' drugs. *See id.* at *1, *4. Although the relator named "several doctors" who allegedly received such kickbacks and who also prescribed the defendants' drugs, she could not identify any false claims submitted to the government or "provide adequate factual support for her assertion that these doctors only prescribed [the drug] as a result of Defendants' provision of kickbacks." *Id.* at *5. Accordingly, the complaint was insufficient. *See id.*; *see also Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1011, 1013 (11th Cir. 2005) (affirming dismissal of complaint alleging, *inter alia*, payment of "illegal kickbacks to physicians to induce referrals" because relator "failed to provide a factual basis to conclude fraudulent claims were ever actually submitted to the government").

Applying these principles here, the TAC clearly falls short. Relators assert that WC promoted its products for off-label uses but have failed to identify a single prescription that was written for a federally-insured patient for such a use and have failed to show that any such prescription actually was filled. Similarly, with respect to WC's alleged involvement in the prior authorization process, Relators have failed to identify a single instance in which a WC sales representative drafted a prior authorization request containing false or fraudulent information.

And even assuming, *arguendo*, that Relators' allegations could support an inference that allegedly improper prescriptions were written, Relators have failed to allege facts sufficient to show that a claim for reimbursement was submitted to the government for the cost of any such prescription.

Relators have identified some claims submitted for reimbursement to six state Medicaid agencies for prescriptions that supposedly resulted from alleged kickbacks provided to healthcare providers in 2010 and over an eight month period in 2011. *See, e.g.*, TAC ¶¶ 231-32, 255-67, 434-37, 466-68, 488-90, 545-46, 566-74, 587-89. Relators, however, have not identified any claims submitted to Medicare or any of the remaining 45 state Medicaid agencies. Nor have they identified any claims that allegedly resulted from off-label promotion or WC's alleged involvement in the prior authorization process.

As in *Rost*, with the exception of the limited Medicaid claims information discussed above, the allegations in the TAC do not "strengthen . . . beyond possibility" Relators' speculation that supposedly tainted prescriptions were written for federally-insured patients, that any such patients filled the prescriptions in question, or that related claims for reimbursement ultimately were submitted to the government. *See* 507 F.3d at 733. And even with respect to the limited Medicaid claims, Relators have failed to demonstrate that the prescriptions in question were caused by the alleged kickbacks.

Relators' conclusory assertion that the claims supposedly submitted to the six state Medicaid agencies referenced in the TAC are "representative" of other kickback-induced submissions, *see* TAC ¶¶ 267, 469, 491, 547. 575, 590, also does not strengthen the inference of fraud beyond a mere "possibility" because it is devoid of factual support. *See Rost*, 507 F.3d at 733. Furthermore, the limited Medicaid claims information does not cure Relators' failure to

identify any claims submitted for reimbursement to Medicare or any other state Medicaid

agency, or for any prescription allegedly written as a result of misleading or off-label promotion

or involvement in the prior authorization process.  Accordingly, the TAC must be dismissed.  *See*

*id.*; *see also Nathan*, 707 F.3d at 461 (affirming dismissal of complaint where allegations that

false claims for payment were submitted to government were "inherently speculative"); *United*

*States ex rel. Duxbury v. Ortho Biotech Prods., L.P.*, 579 F.3d 13, 34 (1st Cir. 2009) (affirming

dismissal with prejudice of some claims in amended complaint).

###### B.      Relators Fail To Show That The Submission Of Any Allegedly False Claim For Payment Was Caused By WC's Alleged Misconduct.

Even if Relators had adequately alleged that false claims were submitted to the

government—which they have not—the TAC should still be dismissed because Relators have

failed to show that the submission of any such claim was caused by WC's alleged misconduct.

*See Clausen*, 290 F.3d at 1312 (affirming dismissal of FCA complaint where relator failed to

allege "any factual basis for his conclusory statement tacked on to each allegation that bills were

submitted to the Government as a result of [the allegedly fraudulent] schemes"); *United States ex*

*rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 728 (10th Cir. 2006)

(affirming dismissal of cause of action because "[t]he chain of causation required to tie [the

defendant's] alleged misrepresentations" to submission of false claims for payment was

"attenuated, and lack[ed] sufficient factual allegations to be anything more than conjecture");

*United States ex rel. Bane v. Breathe Easy Pulmonary Servs., Inc.*, 597 F. Supp. 2d 1280, 1292

(M.D. Fla. 2009) (FCA requires "a strong and direct causal link between the defendant's actions

and the submission of the false claim").

Because the FCA does not define causation, courts turn to common law tort concepts for

guidance.  *See Sikkenga*, 472 F.3d at 714-15; *United States ex rel. Franklin v. Parke-Davis*, No.

- 14 -

96-11651, 2003 WL 22048255, at *4 (D. Mass. Aug. 22, 2003).  These concepts require a

demonstration of both (1) cause-in-fact and (2) proximate causation with respect to the

submission of a false claim for payment.  Cause-in-fact calls for a showing that the alleged

conduct was a "substantial factor" in the submission of the claim.  *Parke-Davis*, 2003 WL

22048255, at *4-5 (quoting *Rodriguez-Cirilo v. Garcia*, 115 F.3d 50, 54 (1st Cir. 1997)

(Campbell, J., concurring)).  Proximate causation, in turn, requires an analysis of whether "the

circumstances and causal relationship are such that the law will impose liability on the

defendant."  *Id.*  "Mere knowledge" that false claims were submitted or false statements related

to those claims were made is not sufficient to establish causation under the FCA.  *See United

States v. President & Fellows of Harvard Coll.*, 323 F. Supp. 2d 151, 186 (D. Mass. 2004).

   This Court addressed the FCA's causation requirement in *United States ex rel. Carpenter

v. Abbott Labs., Inc.*, 723 F. Supp. 2d 395 (D. Mass. 2010).  *Carpenter* involved allegations that

the defendant pharmaceutical manufacturer had engaged in off-label promotion of a drug

indicated to treat HIV and had paid kickbacks to physicians to encourage prescriptions of the

drug.  *See id.* at 397-98.  The defendant moved to dismiss, arguing, *inter alia,* that the relator had

failed to show that the defendant "was the actual and proximate cause of any false claims

submitted by third-party providers."  *Id.* at 405.  In response, the relator pointed to "claims for

Medicare and Medicaid reimbursement submitted on behalf of eight Boston AIDS patients who

were apparently prescribed [the drug] for off-label uses."  *Id.*  The relator also made allegations

concerning surveys taken by the defendant at "off-label promotional events in which a majority

of the doctors who responded said they had been persuaded to prescribe [the drug] more often"

on an off-label basis.  *Id.* at 406.  Taken together, these allegations—although "less than

overwhelming"—were minimally sufficient to show that the defendant had caused the submission of false claims. *See id.* at 407.

Here, as discussed below, the TAC fails to make even minimally sufficient factual allegations to establish causation. In particular, unlike in *Carpenter*, Relators have failed to allege facts sufficient to show that any physician was persuaded to write an allegedly improper prescription by WC's alleged conduct. Accordingly, the TAC fails to demonstrate that WC caused the submission of false claims.

> **1.    Relators do not allege facts sufficient to demonstrate that misleading or off-label promotional statements were a substantial factor in the submission of any false claim for payment.**

Relators describe in great detail the allegedly improper off-label statements and unsubstantiated claims of WC drugs' superiority supposedly made by WC personnel, as well as the purportedly flawed clinical studies allegedly used to support these messages. Standing alone, however, these allegations, even if accepted as true, are insufficient to state a claim for an FCA violation because there is no showing that they were a substantial factor in inducing a claim for payment to a government program. *See United States ex rel. Franklin v. Parke-Davis*, 147 F. Supp. 2d 39, 52 (D. Mass. 2001) (need to show that reimbursement for "uncovered off-label" prescription was "induced by [the] Defendant's fraudulent conduct").

Relators allege that the WC sales force was directed and trained to promote WC products for various off-label purposes and to make unsubstantiated claims that WC products were superior to those of competitors. *See, e.g.*, TAC ¶¶ 294-300, 315-23, 326, 333-36, 399-403, 521, 551. Relators have failed to adequately show, however, that sales representatives actually made these statements promoting off-label uses in communications with particular physicians. In fact, Relators have suggested that some sales representatives were hesitant to make such statements when promoting WC products. *See, e.g.*, *id.* ¶¶ 314, 324, 343, 421.

- 16 -

Furthermore, although Relators have alleged that the supposedly unsubstantiated claims regarding the superiority of WC products constituted "misbranding" under the FDCA, *see id.* ¶¶ 51-54, they have failed to explain how such statements could have rendered any resulting claims for payment ineligible for government reimbursement, particularly when the drugs were prescribed for on-label uses and the promotional statements are not alleged to have been false per se. *Cf. Parke-Davis*, 147 F. Supp. 2d at 52 (noting that FCA violation arises "not from unlawful off-label marketing activity itself[,] but from the submission of Medicaid claims for uncovered off-label uses"). Indeed, Relators have failed to cite any authority, and WC is aware of none, suggesting that the use of allegedly unsubstantiated claims of superiority in marketing a drug has any effect on the eligibility for reimbursement, under either the Medicare or Medicaid statute, of a resulting prescription.[6]

Even assuming, *arguendo*, that physicians received off-label promotional messages or unsubstantiated claims of superiority, Relators have failed to allege facts sufficient to show that these messages caused the submission of false claims to the government. As an initial matter, and as discussed above, *see supra* at pp. 4-5, Relators have not identified a single prescription that allegedly was written for an off-label use or in response to an unsubstantiated claim of superiority, let alone one that was filled for a federally-insured patient and subsequently submitted to the government for reimbursement. And even if it could be assumed that physicians wrote such prescriptions—which it cannot—Relators have failed to show that WC's purportedly

---

[6] Relators have also failed to explain how allegedly unsubstantiated claims of superiority would be material to any government program's reimbursement decisions, as there are no allegations that the government would have declined to reimburse an on-label prescription written as a result of such a statement. *Cf. United States ex rel. Franklin v. Parke-Davis*, 147 F. Supp. 2d 39, 53 (D. Mass. 2001) (statements regarding off-label use were material because "the government would not have paid the claims if it had known of the use for which they were being submitted").

improper promotional messages were a substantial factor in their decisions to do so.  Unlike in *Carpenter*, Relators point to no survey data supporting this causal link, *see* 723 F. Supp. 2d at 405-06, nor do they assert any other facts that would support a relationship between the alleged promotional practices and actual off-label prescriptions written for federally-insured patients.

In the absence of allegations showing a nexus between WC's promotional activities and any alleged prescription written for a federally-insured patient, Relators are left to engage in mere speculation on the issue of causation.  To the extent Relators' allegations "suggest fraud was possible," it is at least equally plausible that any alleged prescription was written because of information that the prescribing physician acquired from peers or medical literature.  *Cf. Rost*, 507 F.3d at 733 (noting that it "may well be" that physicians did not seek reimbursement for prescriptions written for off-label uses and that it "may be" that such prescriptions were written only for patients who paid for the drug themselves or through private insurance).  It is also equally plausible that any such prescription was not filled or was not reimbursed by the government.  *See id.*  As a result, the claims in the TAC based on promotional activities must be dismissed.  *See, e.g.*, *Clausen*, 290 F.3d at 1313 (affirming dismissal on grounds that relator failed to provide information "linking" allegedly fraudulent marketing schemes to claim for reimbursement); *Bane*, 597 F. Supp. 2d at 1292 (finding "link" between conduct and submission of claims for payment "too attenuated to support liability under the [FCA's] causation element").

**2.      Relators do not allege facts sufficient to demonstrate that alleged inducements were a substantial factor in the submission of any false claim for payment.**

Relators likewise have failed to connect their allegations of improper inducements to physicians to the submission of allegedly false claims to the government.  Relators allege that WC provided kickbacks to physicians in the form of dinners, happy hours, speaker fees, preceptorship fees, event tickets, and golf trips.  TAC ¶ 79.  Relators further assert that the

Company spent a significant amount of money on such events. *Id.* ¶¶ 97, 429-31. These allegations, however, even if accepted as true, are insufficient because they fail to demonstrate that any alleged inducements caused physicians to write additional prescriptions for WC drugs.

Relators assert in conclusory fashion that several physicians wrote prescriptions for WC products, which ultimately were submitted to six state Medicaid agencies, as a result of receiving alleged inducements in the form of speaker fees. *See, e.g.*, TAC ¶¶ 231-32, 255-67, 434-37, 466-68, 488-90, 545-46, 566-74, 587-89. Relators have failed, however, to assert that any alleged inducements caused the submission of false claims to Medicare, nor have they alleged facts sufficient to connect the receipt of speaker fees to any physician's decision to prescribe a WC drug to a particular Medicaid patient or on a particular date. Unlike in *Carpenter*, Relators do not point to survey results or other statistical information to support their bald assertion that the alleged Medicaid claims resulted from the supposed kickbacks. *Cf.* 723 F. Supp. 2d at 405-06.[7]

Relators further allege that WC used cost-sharing coupons or samples "as inducements to physicians to prescribe its drugs," *see, e.g.*, TAC ¶¶ 182, 370-76, 441-43, and that WC instructed physicians to tell federally-insured patients that they should use these coupons by identifying themselves as cash-paying patients, *see, e.g.*, TAC ¶¶ 373-74, 441-42. These allegations also fall short, because Relators assert no facts suggesting that the coupons and samples actually induced any healthcare provider to prescribe a WC product. Indeed, Relators identify no physician who

---

[7] Relators make scattered assertions that recipients of alleged kickbacks increased the rate at which they wrote prescriptions for WC drugs. *See* TAC ¶ 140 (alleging that, following "preceptorship," one physician "began to write a greater number of prescriptions for Actonel HD"); *id.* ¶ 231 (alleging that one physician wrote "additional" prescriptions after receiving speaker fees); *id.* ¶ 483 ("[F]ollowing the dinner, these health care professionals increased their prescriptions by approximately 20%."). Even these allegations are insufficient, however, as there is no factual information about the number of prescriptions written, the time period over which the changes in prescribing habits occurred, or the statistical significance of any alleged increase either in isolation or in comparison with prescriptions written by non-participating physicians.

prescribed a medication as a result of the coupon program and no prescription that was written as a result of these alleged inducements.[8]   Relators also do not allege that any patient insured by a government program actually used cost-saving coupons at the pharmacy.[9]   Furthermore, Relators' allegations that federally-insured patients were instructed to pay cash for prescriptions for which they used a coupon, rather than seek coverage from a government program, *see* TAC ¶¶ 182, 373, 441, 508, undermine their assertion that prescriptions were submitted to the government for reimbursement.  *Cf. Rost*, 507 F.3d at 732 (allegations that "most, if not all" patients who took drugs for off-label uses paid for the prescriptions themselves "undercut the strength of the inference that fraud on the government in fact occurred").

As a result, Relators have failed to show that WC's alleged inducements caused the submission of false claims to the government.  Accordingly, these claims in the TAC must be dismissed.  *See, e.g.*, *Clausen*, 290 F.3d at 1313; *Bane*, 597 F. Supp. 2d at 1292.

> **3.   Relators do not allege facts sufficient to demonstrate that activities surrounding the prior authorization process were a substantial factor in the submission of any false claim for payment.**

Relators also have failed to allege facts sufficient to show that any conduct related to the prior authorization process was a substantial factor in causing the submission of false claims to the government.  Relators allege in conclusory fashion that "[a]bsent a submitted prior

---

[8] Relators suggest that some doctors may have written fewer prescriptions for WC drugs after coupon programs were discontinued, *see* TAC ¶ 376 (noting that some doctors in Relator Alexander's territory wrote fewer Actonel prescriptions after WC stopped distributing coupons), but they have failed to allege the amount or time period of the alleged reduction or any facts suggesting that the cessation of the coupon program caused the change in the physicians' prescribing habits.

[9] The use of discounts and coupons is viewed favorably by the government and the industry. Properly reported discounts are carved out from the AKS so as to "encourage providers to seek discounts as a good business practice which results in savings to [M]edicare and [M]edicaid program costs."  H.R. Rep. No. 95-593, pt. 2, at 53 (1977), *reprinted in* 1977 U.S.C.C.A.N. 3039, 3056.

authorization," the government "would not have paid for and [g]overnment [p]rograms would not have reimbursed" certain WC drugs.  *See* TAC ¶ 604.  Relators further assert that the WC sales force was involved in the prior authorization process, either by writing false or fraudulent statements on the forms themselves, by inducing physicians' office staff to draft such language, *see, e.g.*, *id.*, ¶¶ 3, 105, 147, 249, 271, or by completing forms with false or fraudulent information via the Internet, *see id.* ¶ 157.  In addition, Relators allege that sales representatives' involvement in the prior authorization process was "extremely successful" in obtaining reimbursements for WC drugs.  *Id.* ¶ 290.  For three separate and independent reasons, however, these allegations are insufficient to show that WC's alleged conduct caused the submission of false claims.

First, Relators have failed to allege any facts suggesting that the Company's involvement was a substantial factor in the submission of prior authorization requests.  Relators refer to allegations made by another entity in an unrelated lawsuit that "over two hundred" WC sales representatives submitted prior authorization requests, *id.* ¶ 157, but Relators do not assert that these allegations are true or that Relators could assert the allegations themselves under Fed. R. Civ. P. 11.  *See, e.g.*, *Bamberg v. SG Cowen*, 236 F. Supp. 2d 79, 85 (D. Mass. 2002) ("To be sure, a plaintiff should not be encouraged to clone another's complaint if unsure about its factual basis.  Rule 11 requires more.").  Furthermore, Relators do not identify a single healthcare provider or patient for whom prior authorization forms were submitted, or the dates on which the forms were submitted or approved.  Relators also fail to show that prior authorizations were submitted at an increased rate as a result of sales representatives' alleged involvement, or that healthcare providers who had never previously submitted prior authorization forms began to do so.

Second, Relators have failed to show that WC's alleged involvement in the prior authorization process was a substantial factor in the approval of any prior authorization request or the receipt by any patient of a valid prescription.  Relators suggest that sales representatives provided language to office staff to complete these forms, *see, e.g.*, *id.* ¶¶ 272, 277, but they do not demonstrate that this language was actually used by the staff in submitting forms or that such language was false in relation to the condition of particular patients or caused approval of prescriptions that otherwise would have been denied.  Nor do Relators allege that prior authorization requests to any government program were approved at a greater frequency after sales representatives' alleged involvement in the process.

Finally, Relators have failed to show a causal link between sales representatives' alleged involvement in the prior authorization process and the submission of reimbursement claims to the government.  Relators do not identify a single prescription approved via the prior authorization process, let alone a prior authorization that involved a WC sales representative. Nor do they allege facts sufficient to show that a claim for reimbursement was submitted to the government for any such prescription.  Consequently, like Relators' claims of alleged off-label promotion and allegedly unlawful inducements, their claims related to the prior authorization process must be dismissed.  *See, e.g.*, *Clausen*, 290 F.3d at 1313; *Bane*, 597 F. Supp. 2d at 1292.

### C.      Relators Fail To Show That Any State Medicaid Claims For Alleged Off-Label Prescriptions Were False.

In addition to failing to demonstrate that any false claims for reimbursement were submitted to the government, or that WC's alleged conduct caused any such submissions, Relators also have failed to show that any claims submitted to state Medicaid agencies for prescriptions written for off-label uses were false.

Under the Medicaid statute, states "<u>may</u> exclude or otherwise restrict coverage of a covered outpatient drug if the prescribed use is not for a medically accepted indication."  42 U.S.C. § 1396r-8(d)(1)(B)(i) (emphasis added).  A medically accepted indication is a use "which is approved under the [FDCA] or the use of which is supported by one or more citations included or approved for inclusion in any of the compendia."  § 1396r-8(k)(6).

By the language of this statute, states have the "ability to choose whether they will cover off-label, non-compendium prescriptions."  *United States ex rel. Banigan v. Organon USA Inc*., 883 F. Supp. 2d 277, 294 (D. Mass. 2012).  "[I]f a state Medicaid program choses to reimburse a claim for a drug prescribed for off-label use, then that claim is not 'false or fraudulent,' and liability cannot therefore attach for reimbursement."  *Id.*; *see also United States ex rel. Rost v. Pfizer, Inc.*, 253 F.R.D. 11, 16 (D. Mass. 2008) ("Defendants have a compelling position that state approval [of off-label prescriptions] undermines the assertion of a 'false claim.'").

In *Banigan*, the court dismissed FCA claims related to the alleged submission to state Medicaid agencies of claims for reimbursement for prescriptions that were written for off-label uses.  883 F. Supp. 2d at 295.  In light of the states' discretion to provide reimbursement for such prescriptions, the relators' claims failed because they "[did] not allege," and the defendant "[did] not concede [] that any state denies Medicaid coverage for an off-label prescription not included in a medical compendium."  *Id.*  The relators also did not allege that states "must deny coverage of such prescriptions under the Medicaid statute."  *Id.*  Instead, the relators asserted only that states "may" deny such coverage.  *Id.*  This allegation, the court found, was insufficient.  *Id.*

Likewise, here, Relators do not allege that any states have excluded from coverage any of the allegedly off-label, non-compendium uses of WC products referenced in the TAC, nor does WC concede that any state has done so.  Relators rely on 42 U.S.C. § 1396r-8(d)(1)(B)(i), *see*

TAC ¶ 616, but that provision indicates only that states "<u>may</u> exclude or otherwise restrict coverage" of off-label uses, *see* § 1396r-8(d)(1)(B) (emphasis added). Relators do not allege that any state in fact has excluded coverage for any such uses at issue here. Because Relators therefore have not pled that any alleged off-label prescriptions were not reimbursable by state Medicaid programs, Relators have failed to show that any claims for payment for these prescriptions were false or fraudulent. *See Banigan*, 883 F. Supp. 2d at 295.

> **D.    Relators Fail To Show That Any Pre-PPACA Medicaid Claims That Allegedly Resulted From Kickbacks Were False.**

Relators likewise have failed to show that any prescriptions written as a result of alleged inducements to healthcare providers and submitted to state Medicaid agencies for reimbursement prior to March 23, 2010 were false.[10]

Under the pre-March 23, 2010 version of the FCA—which applies to claims for payment submitted prior to that date—a healthcare provider's receipt of improper remuneration does not lead inevitably to the submission of a false claim. *See Rost*, 507 F.3d at 727; *Karvelas*, 360 F.3d at 225. Rather, in order to allege a false claim submitted to a state Medicaid agency, a relator must demonstrate that compliance with the AKS was a precondition to payment by the agency in question. *See New York v. Amgen Inc.*, 652 F.3d 103, 111 (1st Cir. 2011). To survive a motion to dismiss, a relator must identify language in a state statute or agreement with healthcare providers that makes "clear that claims affected by kickbacks may violate a precondition of payment under the state's Medicaid program." *Amgen*, 652 F.3d at 115.

---

[10] Congress amended the AKS as part of the PPACA to provide that "a claim that includes items or services resulting from a violation of this section constitutes a false or fraudulent claim" under the FCA. 42 U.S.C. § 1320a-7b(g). The PPACA took effect on March 23, 2010 and does not apply retroactively. *See Graham Cnty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 559 U.S. 280, 283 n.1 (2010). Therefore, this AKS provision does not apply to claims submitted before March 23, 2010.

Just as Relators fail to allege that any states deny coverage for off-label, non-compendium uses, they also fail to allege that any state Medicaid programs condition payment of reimbursement claims on compliance with the AKS.  Indeed, Relators have not pointed to any state statutes or provider agreements that prohibit reimbursement of claims affected by improper remunerations.[11]  Their allegations that state agreements with providers "typically" require the provider to agree not to accept kickbacks and that providers "generally must certify" compliance with the AKS to participate in state Medicaid programs, *see* TAC ¶ 75-76, are insufficient because they do not support an inference that any such agreements or certifications were made by providers in any of the states at issue.  Because Relators have not pled that prescriptions allegedly induced by kickbacks were not reimbursable by each state Medicaid agency at issue, they have failed to allege that any reimbursement claims for these prescriptions were false or fraudulent.  *See Amgen*, 652 F.3d at 116 (affirming dismissal of claims under Georgia FCA).

### E.   Relators Do Not Allege Facts Sufficient To Demonstrate That WC Participated In A Conspiracy To Defraud The Government.

Relators' claim under 31 U.S.C. § 3729(a)(3) for conspiracy to violate the FCA, *see* TAC ¶¶ 679-81, must be dismissed because Relators have failed to allege facts sufficient to show the existence of any purported agreement to defraud the government.  "Without specific information, [an] allegation of conspiracy is a mere label or legal conclusion entitled to no weight." *Ciaschini*, 282 F.R.D. at 37.  Thus, in order to survive a motion to dismiss, a relator must allege facts sufficient to demonstrate the existence of a conspiratorial agreement "to get a false or fraudulent claim allowed or paid by the United States."  *United States ex rel. President and*

---

[11] Relators allege that Massachusetts regulations require providers to "comply" with the AKS, *see* TAC ¶ 596, but they do not assert that such compliance is a precondition to payment of claims for reimbursement.

*Fellows of Harvard College*, 323 F. Supp. 2d 151, 196 (D. Mass. 2004); *see also Allison Engine Co., Inc. v. United States ex rel. Sanders*, 553 U.S. 662, 673 (2008) (under § 3729(a)(3), "it must be shown that the conspirators intended 'to defraud the Government.'"). Relators allege only that the "conspiratorial objective" of WC and the healthcare providers with whom they allegedly conspired was "to prescribe Warner Chilcott drugs." TAC ¶ 668. The TAC does not suggest that any healthcare provider intended to submit or cause the submission of a false claim. As such, Relators' claim under § 3729(a)(3) for conspiracy to violate the FCA must be dismissed.

## II.   THE THIRD AMENDED COMPLAINT FAILS TO PLEAD FRAUD WITH PARTICULARITY IN ACCORDANCE WITH FED. R. CIV. P. 9(B).

Even if Relators could overcome all of the deficiencies in the TAC discussed above—which they cannot—the pleading still would be subject to dismissal under Rule 9(b) for failure to provide any identifying information for the vast majority of the allegedly false claims submitted to the government. In the context of a *qui tam* action brought under the FCA, Rule 9(b) requires "allegations, stated with particularity, of the actual false claims submitted to the government." *United States ex rel. Karvelas v. Melrose-Wakefield Hosp.*, 360 F.3d 220, 232-33 (1st Cir. 2004) (affirming dismissal of complaint for failure to allege "the dates or content of any particular false or fraudulent claim allegedly submitted for reimbursement"), *abrogated in part on other grounds by Allison Engine Co. v. United States ex rel. Sanders*, 553 U.S. 662 (2008); *see also United States ex rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1312 (11th Cir. 2002) (dismissing complaint for failure to allege "amounts of charges" and "actual [billing] dates"). As the First Circuit has explained, a relator should allege at least some details concerning:

> the dates of the claims, the content of the forms or bills submitted, their identification numbers, the amount of money charged to the government, the particular goods or services for which the government was billed, the individuals involved in the billing, and the length of time between the alleged fraudulent practices and the submission of claims based on those practices . . . .

*Karvelas*, 360 F.3d at 233.[12]

Relators only identify claims submitted for reimbursement to six state Medicaid agencies during a narrow period of time and only for prescriptions allegedly induced by improper kickbacks.  Relators' vast, 300-page TAC provides no information about claims submitted (1) to Medicare, (2) to any other state Medicaid agencies, (3) during any other timeframe, (4) for off-label prescriptions, or (5) for prescriptions allegedly resulting from WC's supposed participation in the prior authorization process.  Nor do Relators assert facts from which the existence of this missing information could be inferred.  *See, e.g.*, *United States ex. rel. Nowak v. Medtronic, Inc.*, Nos. 08-10368, 09-11625, 2011 U.S. Dist. LEXIS 82346, at *123-24 (D. Mass. July 27, 2011) (dismissing FCA claim under Rule 9(b) where relator could "point to no claims for reimbursement to Medicare, Medicaid, or any other federal health care program," but instead alleged generally that products were sold for off-label use).  Indeed, the TAC:

- fails to identify any prescription allegedly (i) written for an off-label use, (ii) resulting from a specific improper inducement in all but six states, or (iii) resulting from assistance by a particular WC sales representative with the prior authorization process;

- fails to identify a single medical provider who allegedly wrote a false prescription (as described in the preceding bullet) to be reimbursed by a federal healthcare program;

---

[12] In order to comply with Rule 9(b) in connection with a claim under 31 U.S.C. § 3729 (a)(2) for the creation or use of false statements or records material to a false claim, a relator "must . . . connect the allegedly fraudulent statement to a planned claim on the government's fisc . . . ." *United States ex rel. Gagne v. City of Worcester*, 565 F.3d 40, 45-46 & n.7 (1st Cir. 2009). Claims under § 3729(a)(3) for conspiracy to violate the FCA also must comply with Rule 9(b). *Id.* at 45.  The TAC is thoroughly devoid of particularized factual allegations to support Relators' claims under these provisions.  Among other deficiencies, Relators allege no plans to submit allegedly false claims to the government and no agreement among any group of entities to submit such claims.

- fails to identify any federally-insured patient who was the recipient of a false prescription (as described in the preceding bullet);

- fails to identify any pharmacy or other provider who submitted a false prescription (as described in the preceding bullet) for reimbursement to a federal program; and

- fails to identify a single prior authorization request that allegedly contained false or fraudulent information.

Despite the two years that have passed since Relators filed their original Complaint, as well as the opportunity that Relators had to review the arguments in WC's motion to dismiss the SAC, Relators still have failed to present any of the necessary details regarding the vast majority of the allegedly false claims that they assert were submitted to the government.  Furthermore, to the extent Relators allege that false claims were submitted to the government before they began working for WC in October 2009 or after they left the Company in 2011, such allegations are necessarily made on information and belief rather than personal knowledge.  These allegations are insufficient, as Relators have failed to explain the basis on which they are founded.  *See Hayduk v. Lanna*, 775 F.2d 441, 444 (1st Cir. 1985).  Similarly, Relators' allegations regarding off-label or misleading claims of superiority or the falsification of prior authorization forms that are made only on information and belief, *see, e.g.*, TAC ¶¶ 305, 367, 518, 537, are inadequate as pled.  In light of these omissions, the TAC must be dismissed.[13]

---

[13] Even if this Court were to find that Relators' allegations as to the subset of false claims supposedly caused by kickbacks and submitted to the six state Medicaid agencies referenced in the TAC were pleaded with the particularity required by Rule 9(b), all of the other claims in the TAC should be dismissed and the case limited accordingly.  *See, e.g., United States ex rel. Duxbury v. Ortho Biotech Prods., L.P.,* 719 F.3d 31, 38-39 (1st Cir. 2013) (affirming limitation of case to specific allegations that satisfied Rule 9(b)).

## III.   THE THIRD AMENDED COMPLAINT FAILS TO STATE A CLAIM UNDER THE STATE FCAS.

Relators also have alleged violations of a number of state false claims acts. *See* TAC, Counts IV-XXXI. Because these statutes are interpreted consistently with the federal FCA, these counts should be dismissed for the reasons previously discussed.[14] *See, e.g.*, *New York v. Amgen Inc.*, 652 F.3d 103, 109 (1st Cir. 2011) (noting that state false claims acts may be "construed consistently" with the FCA because of the "substantial similarity" of the provisions at issue). Furthermore, many of the state statutes on which Relators rely became effective after 2003, the beginning of the period in which WC's allegedly fraudulent sales and marketing practices occurred.[15] To the extent Relators purport to allege violations of these statutes before their effective dates, those claims must be dismissed.

## IV.   ANY REMAINING CLAIMS IN THE THIRD AMENDED COMPLAINT SHOULD BE DISMISSED TO THE EXTENT THEY ARE BASED ON CONDUCT THAT OCCURRED OUTSIDE THE LIMITATIONS PERIOD.

As discussed above, Relators filed their original Complaint in this case on March 30, 2011, and their First Amended Complaint on November 19, 2012. Both of those Complaints and the TAC allege misconduct dating back to 2003. *See* Compl. ¶¶ 21, 23; TAC ¶ 2. This action, however, is subject to a six-year statute of limitations. *See* 31 U.S.C. § 3731(b)(1). At a

---

[14] If the court finds that certain state law claims are not subject to dismissal for failure to state a claim, it should decline to exercise supplemental jurisdiction over those claims, because all of the federal claims are subject to dismissal. *See* 28 U.S.C. § 1367(c)(3).

[15] *See* Colo. Rev. Stat. § 25.5-4-303.5 *et seq.* (effective May 26, 2010); Conn. Gen. Stat. § 17b-301a *et seq.* (effective Oct. 5, 2009); D.C. Code § 2-308.13 *et seq.* (effective Apr. 8, 2011); Ga. Code Ann. § 49-4-168 *et seq.* (effective May 24, 2007); Ind. Code § 5-11-5.5 *et seq.* (effective July 1, 2005); Iowa Code § 685.1 (effective July 1, 2011); Minn. Stat. § 15C.01 *et seq.* (effective July 1, 2010); Mont. Code Ann. § 17-8-401 *et seq.* (effective Apr. 28, 2005); N.J. Stat. Ann. § 2A:32C-1 *et seq.* (effective Mar. 13, 2008); N.M. Stat. Ann. § 27-14-1 *et seq.* (effective May 19, 2004); N.Y. State Fin. Law § 187 *et seq.* (effective Apr. 1, 2007); N.C. Gen. Stat. § 1-605 *et seq.* (effective Jan. 1, 2010); Okla. Stat. tit. 63, § 5053 *et seq.* (effective Nov. 1, 2007); R.I. Gen. Laws § 9-1.1-1 *et seq.* (effective July 1, 2007); Wash. Rev. Code Ann. § 74.66.005 *et seq.* (effective June 7, 2012); Wis. Stat. § 20.931 (effective Oct. 27, 2007).

minimum, therefore, the Court should dismiss any claims in the TAC that are based on conduct occurring prior to March 30, 2005.  In addition, the Court should dismiss any claims that are (a) based on facts materially different from those alleged in the original Complaint and (b) relate to conduct occurring prior to November 19, 2006, as such claims would not relate back to the filing of the original Complaint.  *See* Fed. R. Civ. P. 15(c)(1).

## CONCLUSION

For the reasons set forth above, WC requests that Relators' Third Amended Complaint be dismissed in its entirety.  Because Relators already have had <u>four</u> opportunities to plead their claims—including most recently after having reviewed WC's initial motion to dismiss the SAC—the dismissal of the TAC should be with prejudice.  *See Hayduk v. Lanna*, 775 F.2d 441, 445 (1st Cir. 1985) ("[W]e find that dismissal [with prejudice] of the counts after plaintiffs had two opportunities to amend their complaint was well within the discretion of the district court especially since the plaintiffs were notified before amending a second time that the allegations of fraud in their first amended complaint failed to meet the particularity requirements of Rule 9(b)."); *United States ex rel. Carpenter v. Abbott Labs., Inc.*, 723 F. Supp. 2d 395, 411 (D. Mass. 2010) (denying leave to amend second amended complaint after certain claims dismissed).

Respectfully submitted,

September 20, 2013

/s/ Ronald G. Dove, Jr.
Geoffrey E. Hobart (BBO# 547499)
Matthew J. O'Connor (BBO #631259)
Ronald G. Dove Jr. (*pro hac vice*)
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, NW
Washington, DC  20004
Tel.: (202) 662-5685
Fax: (202) 778-5685

*Attorneys for Warner Chilcott Defendants*

- 30 -

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 20, 2013, a true and correct copy of the foregoing document was served electronically on all registered counsel of record via ECF and is available for viewing and downloading from the ECF system.

/s/ Ronald G. Dove, Jr.
Ronald G. Dove, Jr. (*admitted pro hac vice*)
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, NW
Washington, D.C.  20004
Tel.: (202) 662-5685
Fax:  (202) 778-5685